

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. E. McDonald, Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:    Attention: Mr. C. E. McCormick,
        Director, Bonding &
        Licensing Division

        Opinion No. O-1802
        Re: Construction of Article 118b,
          Vernon's Annotated Civil Stat-
          utes, the Texas Citrus Bonding
          and Licensing Law.

   We are in receipt of your requests for an opinion
of this department on the following questions:

   "H. B. No. 99, Acts of the Forty-fifth Legis-
lature, which Act was amended by S. B. No. 24 and
H. B. No. 76, Acts of the First Called Session of
the Forth-fifth Texas Legislature, and H. B. No.
943, acts of the Forty-sixth Regular Session of
the Texas Legislature, places the responsibility
of administering the same upon the Texas Commis-
sioner of Agriculture, or his duly authorized a-
gent. Certain questions of the administration of
this Act have become involved to where we request
the following information:

   "Question No. 1: Is the Commissioner of Agri-
culture required, after due and thorough investi-
gation and where an opportunity has been granted
the applicant for a hearing, to desist from issu-
ing such license if it is found the applicant has
not fully and finally complied with all of his
citrus contracts of purchase under his previous
citrus dealer's license which license may now be
revoked or terminated for any cause, or has not
fully and finally paid for any and all citrus fruit
harvested under his contracts, or has not fully
complied with all of the required provisions of
the Citrus Bonding and Licensing Law, or that the

applicant's financial statement, given to the
Commissioner of Agriculture at the time of mak-
ing application for license does not show but
little or insufficient assets to allow such ap-
plicant to transact business as a citrus dealer
without placing in jeopardy those with whom he
transacts citrus purchases?

Question No. 2: "Does this law give the
Commissioner of Agriculture the authority to
hold hearings and to suspend or revoke the
license of a dealer who violated his contract
to purchase and/or handle citrus fruits with
other commission merchants, dealers or brokers
if he fails to comply with said citrus purchas-
ing or handling contract with said second dealer
or dealers buying and handling organization?

"Where a cooperative association, chartered
under Chapter 8, Revised Statutes of 1925 as
amended, which pertains to marketing associations,
has entered into a written contract with a com-
mission merchant, dealer or broker whereby said
association deals with or through a dealer, bro-
ker or commission merchant, or their duly author-
ized agent in the purchasing and/or handling of
citrus fruits and said dealer, broker or commis-
sion merchant, or their agent violates the terms
and conditions of a contract between the associa-
tion and said dealer, broker or commission mer-
chant, can said dealer, broker or commission mer-
chant or their agent have his license or buying
agent's identification card revoked by the Com-
missioner of Agriculture for violation of the
citrus purchasing or handling contract?"

Section 4 of Article 118b, Vernon's Annotated
Civil Statutes, provides in part:

"All applications for license under this
Act shall be accompanied by a tender of payment
in full of the fee for such license required;
on receipt of said application duly executed, to-
gether with required fee, it shall be the duty
of the Commissioner or his agents and/or em-
ployees thereunto duly authorized to immediately
issue such license, provided that no license
shall issue to any person when the application

for license filed by such person shall indicate that such person is a suspended licensee within the State of Texas, or that such person's license to do business in Texas has been revoked until the Commissioner is furnished with satisfactory proof that the applicant is, on the date of the filing of such application, qualified to receive the license applied for; the issuance of license to persons who have suffered prior suspension or revocation of license in this State shall be discretionary with the Commissioner; in the exercise of such discretion, the Commissioner is authorized to take into consideration the facts and circumstances pertaining to the prior suspension and/or revocation; the financial condition of the applicant, as of the date of this application, and the obligations due and owing by the applicant to growers and producers of citrus fruits and/or perishable agricultural commodities; 'obligation,' as the term is used in this section, shall be construed to mean any judgment of any Court within this State outstanding against the applicant or certified claims as of the date of the application under consideration by the Commissioner; prior to refusal of license by the Commissioner, any applicant for license shall be entitled to open hearing on the facts pertaining to such application, said hearing to be conducted by the Commissioner, or his agent thereunto duly authorized; if, after such hearing, the Commissioner, in the exercise of his discretion, refuses the license applied for, the applicant shall, within ten (10) days from and after the denial of such license by the Commissioner and not thereafter, file his appeal from the order of the Commissioner denying such license, in any Court of competent jurisdiction within this State; if the Commissioner shall determine that the license applied for shall not be granted, the Commissioner shall deduct from the license fee tendered with such application the sum of Five Dollars ($5), said Five Dollars ($5) to be retained by the Commissioner to defray costs and expenses incident to the filing and examination of said application and shall return the balance of the license fee so tendered with such application to the applicant." (Underscoring ours).

Section 6 reads as follows:

"Any license issued under the provisions of
this act shall remain in full force and effect
for a period of twelve (12) months from and after
the date of issuance thereof unless said permit
shall be cancelled in the manner hereinafter pro-
vided and pursuant to the proceedings hereinafter
required, to wit: any person aggrieved, injured
or damaged by virtue of any violation of the terms
and provisions of this Act by any licensee or by
the transporting or buying agent of any licensee
hereunder, may file with the Commissioner or his
duly authorized agent or employee a verified com-
plaint, setting out the specific violation com-
plained of; the Commissioner, on receipt of said
verified complaint, shall set a date not more
than ten (10) days from the receipt of such com-
plaint for the hearing thereof; Commissioner shall,
by registered mail to the last known address,
notify the person complained of and shall furnish
such person with a copy of such complaint; the
Commissioner may, at his discretion, recess the
hearing provided for in this Section from day to
day if in his discretion the ends of justice de-
mand such continuance; for thepurpose of said
hearings the Commissioner shall have the authority
to summon witnesses; to inquire into matters of
fact; to administer oaths, and to issue the sub-
poena duces tecum, for thepurpose of obtaining
any books, records, instruments of writing, and
other papers pertinent to the investigation at
hand; upon the conclusion of said hearing and the
introduction of all evidence by the respective
parties thereto, the Commissioner shall make his
decision on the basis of the evidence introduced
therein, and shall, if the evidence warrants, issue
his order cancelling the license of the person com-
plained of; any licensee, whose license is so can-
celled by an order of the Commissioner, shall be
notified in writing by registered mail of the can-
cellation of said license and it shall be unlawful
and a violation of this Act for any licensee or
buying or transporting agent to operate from and
after said notification of cancellation, provided
that said licensee or buying or transporting agent
whose license has been so cancelled, shall have
the right of appeal from the order of the Commis-

sioner, canceling said license to any Court of competent jurisdiction within this State, provided that such appeal shall be filed in said court within ten (10) days from and after receipt by licensee of notice of said cancellation, and provided further that the effect of said appeal by said licensee or licensee's agent shall not act to supersede the order of cancellation issued by the Commissioner, pursuant to final determination of the question of cancellation by said Court."

Section 14 relates to the power and authority of the Commissioner of Agriculture in enforcing the Act:

"For the purpose of enforcing the provisions of this Act, the Commissioner is hereby vested with full power and authority and it shall be his duty, either upon his own initiative or upon the receipt of a properly verified complaint, to investigate all alleged violations of this Act and for the purpose of making such investigation, he shall have, at all times, free and unimpeded access to all books, records, buildings, yards, warehouses, storage, and transportation and other facilities or places in which any citrus fruit is kept, stored, handled, processed or transported, and in furtherance of such investigation either the Commissioner in person or through his authorized representatives, may examine any portion of the ledger, books, accounts, memorandum, documents, scales, measures, and other matters, objects or persons pertinent to such alleged violation under investigation. The Commissioner shall take such action and hold such public hearings as in his judgment are shown to be necessary after such investigations, and shall take the proper action with reference to the cancellation or suspension of the license of any dealer hereunder shown to have been guilty of a violation of the terms of this Act. Such hearings shall be held in the nearest city or town in the county where violations are alleged to have occurred. Any order made by the Commissioner with reference to the revocation or cancellation of any license granted under the provisions of this Act, shall be subject to review by a Court of competent jurisdiction." (Underscoring ours).

According to the facts set out in your first question, we are concerned with an applicant who is seeking to renew his license under Article 118b. Said applicant has previously been granted a license, but is guilty of one or more of the following offenses:

(1) Not fully and finally complying with all of his citrus contracts of purchase under his previous citrus dealer's license;

(2) Not fully and finally paying for any and all citrus fruit harvested under his contract;

(3) Not fully complying with all of the required provisions of the Citrus Bonding and Licensing Law; and

(4) Having insufficient assets to transact business as a citrus dealer without placing in jeopardy those with whom he transacts citrus purchases.

It is not stated that the previous license of said applicant was revoked or suspended.

Where a licensee is guilty of violating a provision of the Act, Section 6 provides the procedure whereby his license is cancelled or suspended.

Construing Sections 6 and 14 together, it is apparent that the Commissioner may investigate violations of the Act and hold hearings thereon "either upon his own initiative or upon the receipt of a properly verified complaint." He has the power and authority to "Take the proper action with reference to the cancellation or suspension of the license of any dealer hereunder shown to have been guilty of a violation of the terms of this Act."

It is apparent that where there has been a violation of the provisions of the Act, the Commissioner of Agriculture sho ld proceed against the offender as provided in Sections 6 and 14. If on the basis of the evidence before him, the Commissioner decides that the person complained of is guilty, then he shall either revoke or suspend said person's license.

Furthermore, if the person whose license has been revoked or suspended applies for a subsequent license, the

provisions of Section 4 would apply. In this section it is expressly stated that:

"no license shall issue to any person when the application for license filed by such person shall indicate that such person is a suspended licensee within the State of Texas, or that such person's license to do business in Texas has been revoked, until the Commissioner is furnished with satisfactory proof that the applicant is, on the date of the filing of such application, qualified to receive the license applied for."

It is also provided that "the issuance of license to persons who have suffered prior suspension or revocation of license in this State shall be discretionary with the Commissioner."

Under Section 4 it appears that the Commissioner of Agriculture has no alternative but to issue a license where the application form is properly made out and the fee tendered unless the applicant has previously had his license suspended or revoked. Only where the applicant is already a suspended licensee or has had his license revoked does the Commissioner have any discretion under the Act to issue or to refuse to issue a license. The language of Section 4 is clear and unambiguous on this point.

Under the terms and provisions of the Act any one or more of the conditions described in the first question, if supported by evidence, would justify upon proper hearing an order of cancellation or suspension of a dealer's license. See especially Sections 4, 6, 9, 10, 14.

In answer to your first question, it is our opinion that Article 118b, Vernon's Annotated Civil Statutes, the Texas Citrus Bonding and Licensing Act, requires a hearing by the Commissioner of Agriculture on charges of violation of the Act in compliance with the provisions of Section 6, with revocation or suspension of license as the penalty; that under the terms and provisions of Article 118b licensee's failure to comply with the contracts of purchase, failure to pay for fruit, insolvency, and other violations of the Act are grounds for revocation or cancellation of his license; that under Section 4 of Article 118b the Commissioner has no authority or power to refuse to issue a license unless the

applicant is a suspended licensee or has had his license revoked; and that an applicant whose license has been revoked or suspended has the right to an open hearing on the facts pertaining to such application.

In regard to your second question, we wish to quote Subdivision (b) of Section 4, which reads as follows:

"All 'commission merchants' and/or 'dealers' and 'contract dealers,' as the terms are in this Act defined, shall, in addition to the license fee herein prescribed, deliver to the Commissioner, together with their application for license, a good and sufficient surety bond, payable to the Governor of the State of Texas and his successors in office, in the principal sum of Five Thousand Dollars ($5,000), said bond to be in such form as the Commissioner may prescribe and shall be conditioned upon faithful compliance with the terms and provisions of this Act and upon the faithful performance of the conditions and terms of all contracts made by said 'commission merchants' and/or 'dealers' and 'contract dealers,' pertaining to the handling of citrus fruit under this Act; cause of action may be maintained upon said bond by any person with whom said applicant deals in purchasing, handling, selling and accounting for sales of citrus fruit, as provided in this Act; the aggregate accumulated liability under any such bond shall not exceed the sum of Five Thousand Dollars ($5000), and each such bond shall continue in full force and effect until notice of the termination thereof is given by registered mail to the Commissioner, which fact shall be set forth in the face of said bond, but such notice shall not affect the liability which may have accrued thereon prior to termination. No license shall be issued to any 'commission merchant' or 'dealer,' or 'contract dealer' prior to the delivery to the Commissioner and the approval by him of the bond required under the provisions of this Section. No cooperative association organized pursuant to Chapter 8, Title 93 of the Revised Civil Statutes of Texas, 1925, as amended, that handles fruit only for its members shall be required to furnish bond as required in this Section. Any such cooperative association dealing in citrus fruit other than for its producer members shall be required to furnish bond as any other dealer. It is hereby declared to be the policy of the Legislature to make these exemptions with reference to cooperative associations because of the fact that the producer-members pool their fruit for sale rather than immediately selling it." (Underscoring ours)

From the language above quoted it appears that the terms and provisions of Article 118b apply to the "dealer" in all his contractual relationships whether they exist between him and a grower or purchaser; or between him and other commission merchants, dealers or brokers; or between him and a cooperative association. This conclusion is supported by the fact that "any person" with whom a dealer transacts business in handling, selling, and accounting for sales of fruit may maintain an action on said dealer's bond. It is logical to assume that the purpose of the law was to protect all those who deal with the dealer in the handling and selling of citrus fruit. This would include other dealers and also cooperative associations engaged in the buying, selling and handling of citrus fruit.

Furthermore, after considering Article 118b as a whole and carefully analyzing such Sections as 9, 10, 15, 16 and 17, it is our opinion that it was the intention of the Legislature that a breach of a contract to which he was a party by a licensed dealer amounted to a violation of the Licensing and Bonding Act itself. Consequently, where a dealer violated a contract into which he had entered with another dealer or with a cooperative association, his license would be subject to cancellation or suspension under Section 6 upon proper hearing.

In answer to your last question, it is our opinion that under Article 118b the Commissioner of Agriculture has the authority to subject to a hearing and to revoke or suspend the license of a dealer who violates his contract to purchase and/or handle citrus fruit with another dealer or dealers' organization.

Furthermore, it is our opinion that the Commissioner of Agriculture has the authority to revoke or suspend upon hearing the license of a dealer who directly or by agent violates the Citrus purchasing and/or handling contract into which said dealer has entered with a cooperative association.

Trusting that we have fully answered your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 8, 1940

Gerald C. Mann

DS:J ATTORNEY GENERAL OF TEXAS

By Dick Stout

Dick Stout
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB